**GOLDBERG SEGALLA LLP**
**CHRISTIAN A. CAVALLO, ESQ. (ATTY. NO. 8582413)**
1037 Raymond Boulevard, Suite 1010
Newark, New Jersey 07102
T: (973) 681-7000
F: (973) 681-7101
ccavallo@goldbergsegalla.com
*Attorneys for Plaintiff,*
*Scottsdale Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>T.J.K. STADIUM, INC., THOMAS J. KEELAN, CHRISTOPHER J. McKENNA, and ANDREW L. PEZZA,<br><br>Defendants. | Civil Action No.:<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned attorneys, sets forth the following in support of its Complaint for a declaratory judgment pursuant to 28 U.S.C. § 2201:

**THE PARTIES**

1.      Scottsdale is an Ohio corporation, with its principal place of business in Scottsdale, Arizona.

2.      Defendant T.J.K. Stadium, Inc. ("TJK") is a New Jersey corporation, with its principal place of business in Keansburg, New Jersey.

3.      Defendant Thomas J. Keelan ("Keelan") is an individual who resides at 380 Main Street, Keansburg, New Jersey.

4.      Defendant Andrew L. Pezza ("Pezza") is an individual who resides at 46 Campview Avenue, Keansburg, New Jersey.

5.      Defendant Christopher J. McKenna ("McKenna") is an individual who resides at 319 Adams Street, Eatontown, New Jersey.

6.      Pezza and McKenna are named as defendants in this lawsuit because of their status as interested parties to the instant declaratory judgment proceedings.

## JURISDICTION AND VENUE

7.      The District Court has original jurisdiction over this proceeding because it is a civil action between citizens of different states, where the amount in controversy exceeds $75,000, in accordance with 28 U.S.C. § 1332(a)(1).

8.      For purposes of citizenship, Scottsdale is a citizen of both Ohio and Arizona, and TJK, Kaleen, Pezza, and McKenna each are citizens of New Jersey.  Therefore, there is complete diversity between plaintiff and defendants.

9.      Since this proceeding is a declaratory judgment action commenced under 28 U.S.C. § 2201, the limits of the liability coverage potentially available under the Scottsdale policy at issue for the underlying tort liability claims asserted by Pezza against TJK and Keelan determines the amount in controversy for purposes of 28 U.S.C. § 1332(a)(1), and those limits exceed $75,000.

10.     Venue is proper before the District Court pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events or omissions giving rise to Pezza's underlying tort liability claims against TJK and Kaleen occurred in this judicial district, and the underlying state court tort liability action filed by Pezza against TJK, Kaleen, and McKenna is pending within this District.

## FACTUAL BACKGROUND

### A.      McKenna's Assault of Pezza.

11.      On or about January 1, 2015, Pezza was allegedly assaulted by McKenna outside a bar and restaurant owned and/or operated by TJK (the "Incident").

12.      Upon information and belief, as a result of the Incident, McKenna was charged with aggravated assault in violation of N.J.S.A. 2C:12-1(b).

13.      Upon information and belief, following trial, on or about October 12, 2016, McKenna was convicted of aggravated assault in violation of N.J.S.A. 2C:12-1(b) as a result of the Incident.

### B.      The Underlying Lawsuit.

14.      On or about December 29, 2016, Pezza filed a lawsuit in the New Jersey Superior Court, Law Division, Monmouth County, captioned Pezza v. T.J.K. Stadium, Inc. et al.: docket no. MON-L-0010-17, against TJK, Keelan, and McKenna as a result of the Incident (the "Underlying Lawsuit").

15.      In the Underlying Lawsuit, Pezza claims that on January 1, 2015, he was a patron at a bar and restaurant owned and/or operated by TJK when he was "viciously and maliciously" assaulted by McKenna.

16.      Pezza alleges that the "attack and assault" on him by McKenna was made in a "cruel, wanton, unjustified, malicious, and savage manner".

17.      Pezza further claims that as a result of this vicious and malicious assault by McKenna, he sustained severe, life threatening, permanent bodily injuries, he suffered and continues to suffer from great pain and anguish, he incurred and will continue to incur expenses for medical care and treatment, he has been and will continue to be unable to engage in his usual duties and activities, and he was "caused to suffer other great losses".

3

18.     With respect to TJK and Keelan, Pezza claims that they failed to provide a safe place for business invitees of TJK, such as Pezza, by, amongst other things, failing to prevent an assault, failing to provide adequate security, failing to properly monitor or supervise the premises, and by inviting patrons of TJK to restrain, prevent, and subdue Pezza from leaving the premises.

19.     Pezza further claims that TJK and Keelan failed to provide a safe place for TJK's business invitees, such as Pezza, by serving alcoholic beverages to those that were visibly intoxicated.

20.     Pezza also alleges that TJK and McKenna were negligent and careless in retaining, hiring, training, and supervising and/or managing the security at TJK.

21.     Pezza asserts that as a result of these acts and omissions by TJK and Keelan, he "was caused to be physically assaulted and severely and permanently injured" by McKenna.

**C.      The Scottsdale Policy.**

22.     Scottsdale issued policy number CPS1983558 to All American Pinstripes, Inc. ("All American") for the period May 7, 2014 to May 7, 2015 (the "Scottsdale Policy" or the "Policy").

23.     The Scottsdale Policy contains a commercial general liability coverage part (the "CGL Coverage Part"), and the CGL Coverage Part provides, subject to its terms, conditions, limitations, and exclusions, commercial general liability coverage with a limit of $1 million per occurrence and in the aggregate.

24.     The Declarations to the CGL Coverage Part designate All American as an organization other than a partnership, joint venture, or limited liability company.

25.     The CGL Coverage Part provides coverage only to those persons or entities that qualify as insureds under that coverage part's "Who Is An Insured" provision.

26.     TJK and Keelan have advised Scottsdale that All American does business as TJK,

4

and advised that TJK is not a separate entity from All American.  These parties have further advised that Keelan is an executive officer or director of TJK.

27.     The CGL Coverage Part contains exclusion 2(c), the "Liquor Liability" exclusion, which bars coverage for "bodily injury" for which any insured may be held liable by reason of: 1) causing or contributing to the intoxication of any person, 2) the furnishing of alcoholic beverages to a person under the influence of alcohol, or 3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages (the "Liquor Liability Exclusion").

28.     The Scottsdale Policy also contains a liquor liability coverage part (the "LL Coverage Part"), and the LL Coverage Part provides, subject to its terms, conditions, limitations, and exclusions, liquor liability coverage with a limit of $1 million per common cause and in the aggregate.

29.     The Declarations to the LL Coverage Part designate All American as an organization other than a partnership, joint venture, or limited liability company.

30.     The LL Coverage Part provides coverage only to those persons or entities that qualify as insureds under that coverage part's "Who Is An Insured" provision.

31.     Both the CGL Coverage Part and the LL Coverage Part are modified and subject to the "Punitive Or Exemplary Damage Exclusion", endorsement no. UTS-74g (Ed. 08/95) (the "Punitive Damages Exclusion").

32.     The Punitive Damages Exclusion states that the Scottsdale Policy does not apply to a claim of, or indemnification for, punitive or exemplary damages, including damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

33.     Both the CGL Coverage Part and the LL Coverage Part are also modified and subject to the "Assault And/or Battery Limited Liability Coverage Form (Per Event)", no. GLS-285s (Ed. 12/13) (the "A&B Coverage Form").

34.    The A&B Coverage Form states that the Scottsdale Policy does not apply to "bodily injury" or "injury" arising from:

1. Assault and/or Battery committed by:
   a. Any insured;
   b. Any employee/"employee" of any insured; or
   c. Any other person; or

2. The failure to suppress or prevent Assault and/or Battery by any person in **1.** above; or

3. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery; or

4. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorizes, or failure to so report; or
   e. Retention

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1.** and **2.** above.

35.    The A&B Coverage Form states that Scottsdale will have no duty under the Policy to defend any lawsuit seeking damages on account of any such injury, unless coverage is provided by the A&B Coverage Form.

36.    The A&B Coverage Form then provides, subject to its terms, conditions, exclusions, and limitations, coverage for damages because of "injury" or "bodily injury" to any person arising out of assault and/or battery that takes place during the policy period, with Limits of Liability of $5,000 each event and $10,000 in the aggregate.

37.    With respect to the limited coverage provided by the A&B Coverage Form for assault and/or battery, the A&B Coverage Form states that Scottsdale shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in the A&B Coverage Form has been exhausted.

38.     The A&B Coverage Form further indicates that the limits of liability stated in that coverage form as applicable to each event is the most that Scottsdale will pay for all damages arising out of "injury" or "bodily injury" based on or arising out of the same assault and/or battery, regardless of the numbers of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits.

39.     The A&B Coverage Form states that the form's limited coverage does not apply to any claim for punitive or exemplary damages.

**D.     Scottsdale's Offer To Defend TJK And Keelan For The Underlying Lawsuit Under A Reservation of Rights.**

40.     By letter dated February 14, 2017, Scottsdale offered to defend TJK and Keelan for the Underlying Lawsuit, subject to a full and complete reservation of its rights under the Policy, including but not limited to, its right to refuse to indemnify TJK and Keelan for any liability or legal obligation they incur for the Underlying Lawsuit in excess of the $5,000 available under the A&B Coverage Form.

41.     TJK and Keelan accepted Scottsdale's offer of a defense under a reservation of rights, and Scottsdale's assigned counsel has been defending these parties for the Underlying Lawsuit, subject to this reservation of Scottsdale's rights.

## COUNT ONE

(Declaratory Judgment As To Insured Status)

42.     Scottsdale repeats and re-alleges its allegations in paragraphs 1 through 41 of its Complaint as if set forth at length herein.

43.     The Scottsdale Policy provides coverage only to those persons and entities that qualify as insureds under the "Who Is An Insured" provisions to the CGL Coverage Part and to the LL Coverage Part.

44.     Since All American is designated in the Policy's Declarations as a corporation

7

other than a partnership, joint venture, or limited liability company, All American qualifies as an insured under the Who Is An Insured provisions, and All American's "executive officers" and directors also qualify as insureds under these provisions, but only with respect to their duties as All American's officers or directors.

45.    TJK and Kaleen have advised Scottsdale that All American does business as TJK, and thus, that All American and TJK are the same entity.   These parties have further advised Scottsdale that Kaleen is an executive officer or director of TJK.  If it is determined that this is not correct, and that TJK is a distinct entity from All American, then TJK and Kaleen would not qualify as insureds under the Policy's CGL Coverage Part or the LL Coverage Part, and thus, neither TJK or Kaleen would be entitled to coverage for the Underlying Lawsuit under the Scottsdale Policy.

46.    Therefore, because there is an actual controversy between the parties regarding their respective rights and obligations under the Scottsdale Policy with regard to the Underlying Lawsuit, pursuant to 28 U.S.C. § 2201, Scottsdale is entitled to a declaration from the Court that to the extent TJK and Kaleen do not qualify as insureds under the Scottsdale Policy, Scottsdale would have no obligation to defend or indemnify these parties for the Underlying Lawsuit.

47.    By entering a declaratory judgment in favor of Scottsdale, the Court would terminate the controversy regarding the rights and obligations of the parties under the Scottsdale Policy with regard to the Underlying Lawsuit.

## COUNT TWO

(Declaratory Judgment Of No Coverage Under CGL Coverage Part)

48.    Scottsdale repeats and re-alleges its allegations in paragraphs 1 through 47 of its Complaint as if set forth at length herein.

49.    In his complaint in the Underlying Lawsuit, Pezza claims that TJK and Kaleen caused or contributed to the assault of him by McKenna by, amongst other acts and omissions,

serving McKenna alcohol when he was visibly intoxicated.

50.     To the extent they qualify as insureds under the Scottsdale Policy, there would be no coverage available to TJK and Kaleen for the Underlying Lawsuit under the Policy's CGL Coverage Part pursuant to the Liquor Liability Exclusion.

51.     Therefore, because there is an actual controversy between the parties regarding their respective rights and obligations under the Scottsdale Policy with regard to the Underlying Lawsuit, pursuant to 28 U.S.C. § 2201, Scottsdale is entitled to a declaration from the Court that TJK and Kaleen are not entitled to coverage for the Underlying Lawsuit under the Scottsdale Policy's CGL Coverage Part, and that Scottsdale has no obligation to defend or indemnify these parties for the Underlying Lawsuit under the CGL Coverage Part.

52.     By entering a declaratory judgment in favor of Scottsdale, the Court would terminate the controversy regarding the rights and obligations of the parties under the Scottsdale Policy's CGL Coverage Part with regard to the Underlying Lawsuit.

## COUNT THREE

(Declaratory Judgment Regarding Application of A&B Coverage Form)

53.     Scottsdale repeats and re-alleges its allegations in paragraphs 1 through 52 of its Complaint as if set forth at length herein.

54.     In his complaint in the Underlying Lawsuit, Pezza claims that McKenna viciously and maliciously assaulted him at the bar and restaurant owned and/or operated by TJK.

55.     Pezza further claims that TJK and Kaleen failed to suppress or prevent the assault by McKenna, and alleges that they caused or contributed to the assault by serving him alcohol when he was visibly intoxicated and by negligently hiring, retaining, and supervising the security at the bar and restaurant.

56.     Pursuant to the A&B Coverage Form, to the extent they are entitled to any coverage under the Scottsdale Policy for the Underlying Lawsuit, the maximum amount of

coverage that would be available to TJK and Kaleen under the Policy for the Underlying Lawsuit is the $5,000 per event liability limit provided by the A&B Coverage Form.

57.     Therefore, because there is an actual controversy between the parties regarding their respective rights and obligations under the Scottsdale Policy with regard to the Underlying Lawsuit, pursuant to 28 U.S.C. § 2201, Scottsdale is entitled to a declaration from the Court that the maximum amount of coverage that would be available to TJK and Kaleen for the Underlying Lawsuit under the Scottsdale Policy is the $5,000 per event liability limit provided by the A&B Coverage Form.

58.     By entering a declaratory judgment in favor of Scottsdale, the Court would terminate the controversy regarding the rights and obligations of the parties under the Scottsdale Policy with regard to the Underlying Lawsuit.

## COUNT FOUR

(Declaratory Judgment Regarding Exemplary or Punitive Damages)

59.     Scottsdale repeats and re-alleges its allegations in paragraphs 1 through 58 of its Complaint as if set forth at length herein.

60.     In his complaint in the Underlying Lawsuit, Pezza alleges that McKenna attacked and assaulted him in a cruel, wanton, unjustified, malicious, and savage manner, and claims that as a result, he is entitled to recover exemplary and punitive damages against McKenna.

61.     Pezza further alleges that TJK and Kaleen are jointly and severally liable with McKenna for all damages to which Pezza is entitled.

62.     To the extent they qualify as insureds under the Scottsdale Policy, there would be no coverage available to TJK and Kaleen for any liability or legal obligation they incur to pay exemplary damages or punitive damages to Pezza for the Underlying Lawsuit pursuant to the Policy's Punitive Damages Exclusion and pursuant to the exclusion within the A&B Coverage Form for punitive or exemplary damages.

63.     Therefore, because there is an actual controversy between the parties regarding their respective rights and obligations under the Scottsdale Policy with regard to the Underlying Lawsuit, pursuant to 28 U.S.C. § 2201, Scottsdale is entitled to a declaration from the Court that Scottsdale has no obligation to provide coverage to TJK and Kaleen for any liability or legal obligation they incur to pay exemplary damages or punitive damages to Pezza for the Underlying Lawsuit under the Scottsdale Policy.

64.     By entering a declaratory judgment in favor of Scottsdale, the Court would terminate the controversy regarding the rights and obligations of the parties under the Scottsdale Policy with regard to Pezza's claims in the Underlying Lawsuit for exemplary damages and punitive damages.

**GOLDBERG SEGALLA LLP**
*Attorneys for Plaintiff,*
*Scottsdale Insurance Company*

By:

Christian A. Cavallo

Dated: January 17, 2018
8226100